IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**UNITED STATES OF AMERICA,**

**v.**                                                                    Criminal No. **3:18CR90**

**LEONUS STEVENSON PETERSON,**

Petitioner.

## MEMORANDUM OPINION

Leonus Stevenson Peterson, a federal inmate proceeding *pro se*, filed this 28 U.S.C. § 2255 motion to vacate, set aside, or correct his sentence. ("§ 2255 Motion," ECF No. 308.) Peterson contends that he is entitled to relief upon the following grounds:[1]

| | |
|---|---|
| Claim One: | "Counsel Mr. Dinkin was constitutionally deficient during the plea process by failing to fully explain the full scope of the appellate waiver. But for counsel's deficient performance, Mr. Peterson would not have been deprived of a direct appeal proceeding and allowed to litigate the grounds raised. Petitioner was further prejudiced by a procedurally and substantively unreasonable sentence tainted by the ineffective assistance of counsel." (*Id.* at 4.) |
| Claim Two: | "Counsel Mr. Dinkin was constitutionally deficient in that he failed to negotiate a plea with a limited waiver . . . ." (*Id.* at 5.) |
| Claim Three: | "Mr. Peterson's sentence was based on false and inaccurate information which violates the Sixth Amendment's Due Process clause and has resulted in a fundamental miscarriage of justice." (*Id.* at 7.) |
| Claim Four: | "Mr. Peterson was denied due process, and Mr. Dinkin provided ineffective assistance" when the Magistrate Judge mistakenly cited the wrong subsection of the statute. (*Id.* at 8.) |
| Claim Five: | "Mr. Dinkin was ineffective for failing to raise the issue that the Government's Motion to Dismiss his appeal constitute[d] a breach of the plea agreement." (ECF No. 309, at 2.) |

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system to the parties' submissions. The Court corrects the capitalization, punctuation, and spelling, and omits any emphasis or symbols in quotations from the parties' submissions and the record.

The Government filed a response. (ECF No. 313.)  Peterson filed a reply.  (ECF No. 315.)
The § 2255 Motion, (ECF No. 308), will be DENIED because it lacks merit.

## I. PROCEDURAL HISTORY

On July 25, 2018, the grand jury charged Peterson with possession with the intent to
distribute a mixture and substance containing a detectable amount of fentanyl. (ECF No. 9, at 1.)
On September 29, 2018, in a Superseding Indictment, the grand jury charged Peterson with:
conspiracy to distribute and possess with intent to distribute 100 grams or more of a mixture and
substance containing a detectable amount of heroin, a Schedule I controlled substance, and 40
grams or more of a mixture and substance containing a detectable amount of fentanyl, a Schedule
II controlled substance (Count One); possession with intent to distribute and distribute a mixture
and substance containing a detectable amount of heroin, and fentanyl, the use of which resulted in
the death of E.R. (Count Two); and possession with intent to distribute a mixture and substance
containing a detectable amount of fentanyl (Count Five).  (ECF No. 36, at 1–3.)

Peterson initially was represented by the Office of the Public Defender.  Counsel filed a
motion to dismiss Count Two as duplicitous; the Court, however, denied the motion.  (ECF Nos.
70, 84.)  On March 7, 2019, a grand jury charged Peterson in a Second Superseding Indictment
with: conspiracy to distribute and possess with intent to distribute 100 grams or more of a mixture
and substance containing a detectable amount of heroin, a Schedule I controlled substance, and 40
grams or more of a mixture and substance containing a detectable amount of fentanyl, a Schedule
II controlled substance, which led to the serious bodily injury of seven individuals including the
death of one person (Count One); distributing a mixture and substance containing a detectable
amount of heroin, and fentanyl, the use of which resulted in the death of E.R. (Count Two); and
possession with intent to distribute a mixture and substance containing a detectable amount of
fentanyl (Count Three).  (ECF No. 117, at 1–3.)  Peterson faced a mandatory term of life

2

imprisonment for these charges. *See* 21 U.S.C. § 841(b)(1)(B) (explaining that if a defendant is previously convicted of a prior serious drug felony and death or serious bodily injury results, the defendant "shall be sentenced to life imprisonment"). Counsel filed a motion to dismiss five of the overdoses alleged in Count One, which the Court denied. (ECF No. 135, 140.)

On August 27, 2019, counsel filed a Motion to Withdraw as Attorney and Appoint New Counsel citing "an irretrievable breakdown in communication" and that "Peterson ha[d] lost confidence in counsel and their ability to represent his interests." (ECF No. 208, at 1.) The Court granted the motion and appointed new counsel. (ECF Nos. 211–13.)

Three days before the jury trial was to begin, on October 9, 2020, the Government filed a Criminal Information charging Peterson with one count of conspiracy to distribute more than 100 grams of a mixture and substance containing a detectable amount of heroin. (ECF No. 242, at 1.) That same day Peterson waived indictment and pleaded guilty to the one-count criminal information. (ECF Nos. 243, 244.) Peterson's guilty plea was extremely favorable, in part, because it removed any reference to the distributed drugs causing death, thereby reducing his sentencing exposure from a mandatory life sentence to a statutory maximum sentence of forty years. Specifically, in his Plea Agreement, Peterson agreed that he faced a mandatory minimum sentence of five years of incarceration and a statutory maximum of forty years. (ECF No. 247 ¶ 1.) Peterson agreed that he was "plead[ing] guilty because the defendant is in fact guilty of the charged offense. The defendant admits the facts set forth in the Statement of Facts filed with this Plea Agreement and agrees that those facts establish guilt of the offense charged beyond a reasonable doubt." (*Id.* ¶ 3.) Peterson also agreed that the Court has the "authority to impose any sentence within the statutory maximum" and that "the defendant cannot withdraw a guilty plea based on the actual sentence." (*Id.* ¶ 5.) Peterson agreed that counsel rendered effective assistance,

3

and that he understood that he "surrender[ed] certain rights as provided in this agreement" (*id.*

¶ 4), including that he

> knowingly waives the right to appeal the conviction and any sentence within the
> statutory maximum described above (or the manner in which that sentence was
> determined) on the grounds set forth in 18 U.S.C. § 3742 or on any ground
> whatsoever other than an ineffective assistance of counsel claim that is cognizable
> on direct appeal, in exchange for the concessions made by the United States in this
> Plea Agreement.  This agreement does not affect the rights or obligations of the
> United States as set forth in 18 U.S.C. § 3742(b).

(*Id.* ¶ 6.)  The Government agreed that, in exchange for Peterson's guilty plea, it would move to

dismiss the Indictment, Superseding Indictment, and Second Superseding Indictment at the

conclusion of sentencing.  (*Id.* ¶ 8.)

In the Statement of Facts, Peterson "stipulate[d] that the allegations in the pending Criminal

Information and the following facts are true and correct, and that had the matter gone to trial the

United States would have proven them beyond a reasonable doubt."  (ECF No. 248, at 1.)  The

Statement of Facts set forth the following:

> 1.      Starting before September 1, 2017 and continuing through and
> including June 22, 2018, in the Eastern District of Virginia and elsewhere within
> the jurisdiction of this Court, the defendant, LEONUS STEVENSON PETERSON,
> did knowingly, intentionally and unlawfully combine, conspire, confederate and
> agree with others to distribute more than 100 grams of a mixture and substance
> containing heroin, a Schedule I controlled substance containing heroin, a Schedule
> I controlled substance in violation of 21 U.S.C. § 846 and 841(b)(1)(B).
> 2.      During the course of the conspiracy, LEONUS STEVENSON
> PETERSON obtained quantities of heroin that was sometimes mixed with fentanyl
> (commonly called "scramble,") that he distributed to Jenna Queen and others for
> distribution and use.  During the course of the conspiracy, PETERSON regularly
> distributed multiple gram quantities of scramble to Jenna Queen who would take
> the scramble back to Greg Rosie in Caroline County for further distribution.  In
> November 2017, PETERSON was distributing scramble to Queen several times per
> week.
> 3.      On November 28, 2017, like many days during the Fall of 2017,
> Rosie gave money to Jenna Queen to buy a quantity of heroin from PETERSON in
> Richmond, Virginia.   Marcus Watson drive Queen to Richmond to meet
> PETERSON, who provided a mixture and substance containing heroin to Queen.
> 4.      From September 2017 to June 22, 2018, PETERSON distributed
> more than 100 grams of a mixture and substance containing heroin.

5.      The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident or other innocent reason. This statement of facts sets forth facts necessary to support PETERSON's plea of guilty and does not necessarily relate all facts relevant to the charged offense or other persons who may have been involved in the offense.

(ECF No. 248, at 1–2.)

During the Rule 11 hearing, Peterson agreed that he understood the charge against him, that the Government could prove each element beyond a reasonable doubt, and that he was pleading guilty because he committed the offense. (ECF No. 286, at 11.) Peterson agreed that he faced a mandatory minimum sentence of five years of incarceration up to maximum term of forty years. (*Id.* at 11–12.) Peterson agreed that he had sufficient opportunity to discuss the charges and any possible defenses and the terms of the Plea Agreement with counsel and was entirely satisfied with counsel up to that point. (*Id.* at 14.) Peterson confirmed that it was solely his decision to plead guilty and that he was pleading guilty because he was in fact guilty. (*Id.* at 15.) The Court highlighted to Peterson that the Plea Agreement contained no promise about what sentence he could receive and that the Court could sentence him to "anywhere between five and 40 years" and the "District Court has [the] discretion to sentence you within that range." (*Id.* at 16.) Peterson agreed that he understood. (*Id.*)

The Court also specifically noted that "there is also a waiver of your right to appeal. And so you understand that even though the government may appeal from any sentence imposed you cannot do so. So you have waived your right to appeal this conviction and any sentence imposed." (*Id.* at 17.) The Court then explained: "And I should qualify that. So long as the sentence is within that range that I previously told you about, the five to 40 years, so long as it is within that range you waived your right to appeal. Do you understand?" (*Id.*) Peterson answered in the affirmative. (*Id.*) Peterson agreed that he had discussed these provisions with counsel. (*Id.* at 19.) Peterson also agreed that the Statement of Facts was an accurate statement of what happened, and

5

that no one had made any threats or promises in order to obtain his guilty plea.  (*Id.* at 20.)  With

respect to sentencing, the Court explained that a presentence report would be prepared that would

consider "the nature and circumstances of the offense, your prior record, any relevant conduct, and

also your acceptance of responsibility" amongst other things in calculating an advisory guidelines

range.  (*Id.* at 21–22.)  Peterson agreed that he understood, agreed that any sentence calculation or

estimate that he reviewed with counsel was nothing more than a prediction, and confirmed that he

had discussed the sentencing process with counsel.  (*Id.* at 22–24.)  The Court found that Peterson

was "fully competent and capable of entering an informed plea, that [he was] aware of the nature

and consequences of the plea, and that the plea of guilty [was] knowing and voluntary," and then

accepted the plea, and adjudged Peterson guilty of the offense.  (*Id.* at 25–26; *see* ECF No. 260

(adopting report and recommendation from Rule 11 hearing).)

Prior to sentencing, a Presentence Investigation Report ("PSR") was prepared.  (ECF

No. 258.)  The PSR detailed a great deal of relevant conduct including the death of E.R. after using

heroin supplied by Peterson and found that Peterson was being held accountable for the

distribution of 2,326 grams of heroin.  (*Id.* ¶¶ 14, 22.)  Peterson's Base Offense Level was 30

because the offense involved at least one but less than three kilograms of heroin.  (*Id.* ¶ 28.)

Peterson received no other enhancements.   With a three-point deduction for acceptance of

responsibility, Peterson had a Total Offense Level of 27 and a Criminal History Category of IV,

which resulted in an advisory guidelines range of 100 to 125 months of imprisonment.  (*Id.* ¶¶ 35–

37, 119.)

Counsel filed an Objection to the PSR arguing that the drug weight was "vastly overstated"

and that his Total Offense Level should be 25, resulting in a guidelines range of 84 to 105 months

of incarceration.  (ECF No. 264, at 1, 3.)  Counsel also filed a Motion for a Variance Sentence

arguing that 60 months of incarceration was appropriate.  (ECF No. 265, at 1.)  In response, the

6

Government moved for an upward variance based on Peterson's extensive criminal history, including 21 prior felony convictions that were underrepresented in his Criminal History Category, and based on the need to protect the public, the seriousness of the offense, and to deter future criminal conduct.  (ECF No. 267, at 2–8.)

During sentencing, the Court sustained Peterson's objection and found that the drug weight reflected in the PSR was too high and found the drug weight attributable to Peterson was 900 grams, which lowered his Total Offense Level to 25, and the guidelines range became 84 to 105 months.  (ECF No. 287, at 20–21.)  Nevertheless, the Court upwardly varied from the guidelines range based on Peterson's role in the offense, the seriousness of the offense, to protect the public, and to avoid sentencing disparities among defendants.  (*Id.* at 51–57.)  On April 7, 2021, the Court sentenced Peterson to a variant sentence of 240 months.  (ECF No. 276, at 2.)

Despite the appeal waiver, Peterson noted an appeal challenging his sentence.  (ECF No. 278.)  The Government moved to dismiss the appeal as barred by Peterson's waiver of right to appeal in the plea agreement.  (*See* ECF No. 289, at 1.)  In granting the motion to dismiss, the United States Court of Appeals for the Fourth Circuit explained:  "Upon review of the plea agreement and the transcript of the Fed. R. Crim. P. 11 hearing, we conclude that Peterson knowingly and voluntarily waived his right to appeal and that the issues Peterson seeks to raise on appeal fall squarely within the scope of his waiver of appellate rights."  (*Id.*)  Accordingly, the Fourth Circuit dismissed the appeal.  (*Id.*)  The Supreme Court subsequently denied his petition for writ of certiorari.  (ECF No. 297.)

On July 18, 2022, Peterson filed the § 2255 Motion that is currently before the Court.

## II. ANALYSIS

### A.    Sentencing Claims are Not Cognizable in § 2255

In Claim Three, Peterson contends that his "sentence was based on false and inaccurate information which violated the Sixth Amendment's Due Process clause and has resulted in a fundamental miscarriage of justice." (ECF No. 308, at 7.)  Specifically, Peterson argues that the Court improperly found that Peterson's drug distribution led to the death of Mrs. Rosie and "speculated that" it led to the overdose or death of other individuals when there was no evidence that this was true.  (ECF No. 309, at 8.)  However, "[t]he language of § 2255 makes clear that not every alleged sentencing error can be corrected on collateral review.  The Supreme Court has instructed that only those errors presenting a 'fundamental defect which inherently results in a complete miscarriage of justice' are cognizable.  *United States v. Foote*, 784 F.3d 931, 932 (4th Cir. 2015) (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)).  As the Fourth Circuit has explained, "it is clear that 'miscarriages of justice' in the post-conviction context are grounded in the notion of actual innocence . . . ." *Id.* at 941.  To the extent that Peterson suggests that he is actually innocent of the deaths or overdoses of various individuals, "the Supreme Court [and the Fourth Circuit] has yet to stretch [the concept of actual innocence] to non-capitol sentencing." *Id.* Peterson fails to demonstrate that his appropriately imposed variant sentence constitutes a defect, much less a fundamental defect that resulted in a miscarriage of justice.  Accordingly, Claim Three will be DISMISSED.

### B.    Ineffective Assistance of Counsel

To demonstrate ineffective assistance of counsel, a convicted defendant must first show that counsel's representation was deficient, and second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong

8

presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

In the context of a guilty plea, the Supreme Court has modified this second prong of *Strickland* to require the convicted defendant to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Of course, in conducting the foregoing inquiry, the representations of the convicted defendant, his lawyer, and the prosecutor during the plea proceedings, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). In light of the strong presumption of verity that attaches to a petitioner's declarations during his plea proceedings, "in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (citations omitted). Thus, the Fourth Circuit has admonished that "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on

allegations that contradict the sworn statements." *Id.* at 221–22. No circumstances exist here that would lead the Court to consider Peterson's prior sworn statements as other than truthful.

### 1.    Claims Related to Waiver of Appeal

In Claim One, Peterson argues that: "Counsel Mr. Dinkin was constitutionally deficient during the plea process by failing to fully explain the full scope of the appellate waiver. But for counsel's deficient performance, Mr. Peterson would not have been deprived of a direct appeal proceeding and allowed to litigate the grounds raised." (ECF No. 308, at 4.) Peterson also argues that "Petitioner was further prejudiced by a procedurally and substantively unreasonable sentence tainted by the ineffective assistance of counsel." (*Id.*) Peterson contends that counsel "advised him that there was no specific sentence being agreed to . . . under Rule 11(c)(1)(C), so he could appeal the sentence imposed" and that "in paragraph 5 of the plea agreement he was preserving his right to appeal the sentence on the basis of an unreasonable one." (ECF No. 309, at 5.) Peterson also argues that "[c]ounsel never explained to Peterson that he was waiving his right to challenge the procedural means or manner by which this sentence was imposed." (*Id.*) The Court has great difficulty believing that counsel advised Peterson that he would be able to appeal his sentence. Nevertheless, regardless of what counsel allegedly told Peterson, during the Rule 11 hearing, the Court made it very clear that Peterson was waiving his right to appeal any sentence imposed that was within the statutory maximum. Nothing in the record would permit the Court to consider Peterson's sworn statements at the plea colloquy that he understood this waiver as anything other than truthful.[2]

Peterson specifically agreed in his Plea Agreement that he was waiving the right to appeal *any* sentence within the statutory maximum of forty years. Peterson also agreed, in his Plea

---

[2] Indeed, on appeal, the Fourth Circuit already found Peterson's guilty plea was knowing and voluntary and his sentencing challenges were barred by that agreement.

Agreement, that simply because he received a sentence that was higher than he expected, that was not grounds to withdraw his guilty plea. (ECF No. 247 ¶ 5.) During the Rule 11 hearing, the Court asked Peterson whether he understood and agreed that he was waiving his right to appeal his sentence as long as it was within the statutory maximum.[3] (ECF No. 286, at 17.) Peterson also agreed that he understood that "the District Court has [the] discretion to sentence [him] within that range," (*id.* at 16), which meant that the Court could "sentence [him] both above the advisory guidelines range, below the range, or within the range." (*Id.* at 22.) This clearly included how the Court arrived at the appropriate sentence within that range. Peterson agreed that he understood the sentencing process and that he had discussed the appeal waiver with counsel. (ECF No. 286, at 19, 24.) Therefore, based on his representations in his plea hearing, Peterson's allegations here are palpably incredible and are barred by his validly entered guilty plea. *Lemaster*, 403 F.3d at 221 (internal quotation marks omitted) (citation omitted).

Peterson also fails to demonstrate any prejudice. First, Peterson cannot "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. Without the benefit of the extremely favorable guilty plea, Peterson faced a mandatory sentence of life in prison. No reasonable defendant would have insisted on proceeding to trial facing such a sentence. Second, because the Court thoroughly explained the appeal waiver at the Rule 11 hearing, Peterson cannot demonstrate any prejudice flowing from any alleged misinformation from his counsel. *United States v. Foster*, 68 F.3d 86, 88 (4th Cir. 1995). Accordingly, Claim One (a) lacks merit and will be DISMISSED.

---

[3] As discussed in conjunction with Claim Four, Peterson also makes much of the fact that the Court cited the wrong subsection of 21 U.S.C. § 841(b)(1)(B) at the Rule 11 hearing. (*See* ECF No. 309, at 5.) This incorrect citation does not make his plea involuntary or show that counsel was ineffective.

Similarly, in Claim Two, Peterson argues that, "[c]ounsel Mr. Dinkin was constitutionally deficient in that he failed to negotiate a plea with a limited waiver . . . ." (*Id.* at 5.) As a preliminary matter, the Government indicates that it would not have offered Peterson a plea agreement with a limited waiver, thus it is doubtful that counsel was deficient or that Peterson was prejudiced. (ECF No. 313, at 7); *cf. Lafler v. Cooper*, 556 U.S. 156, 168, 1387 (2012) (observing a defendant cannot demonstrate prejudice with respect to a plea offer "[i]f no plea offer is made"). Despite this, to the extent that Peterson argues that counsel could have negotiated a plea with a limited waiver, Peterson fails to show any prejudice. Peterson suggests that he "could have pled straight up to the Indictment and he would have been in a better position and preserved his appeal." (*Id.* at 6.) Peterson's argument is demonstrably false. At the time that Mr. Dinkin represented Peterson, the Second Superseding Indictment was the only charging document. If Peterson had pled guilty to the Second Superseding Indictment, he faced a mandatory sentence of life in prison. Although Peterson may have preserved his right to appeal, he would have received a guaranteed sentence of life. No reasonable defendant would have pled to mandatory life in prison simply to preserve his appellate rights. Peterson fails to show any deficiency of counsel or resulting prejudice. Accordingly, Claim Two lacks merit and will be DISMISSED.

### 2.   Plea Hearing Claim

In Claim Four, Peterson contends that he "was denied due process, and Mr. Dinkin provided ineffective assistance" when the magistrate judge mistakenly cited an incorrect subsection of the statute. (ECF No. 308, at 8.) Peterson claims that the

> court admonished him as to one sentencing provision during the plea colloquy but sentenced him pursuant to a provision that was not mentioned or discussed during the plea colloquy. The plea colloquy limited the district court to a sentence of 60 months under 841(b)(1)(D) as it was the plea accepted by the court and the court found the plea was knowing and voluntary, yet counsel did not object. The deficient performance caused Mr. Peterson to be sentenced to 240 months.

12

(*Id.*)  Peterson argues that "[s]ince the district court accepted the penalty under 841(b)(1)(D), it was bound to sentence Mr. Peterson to that provision, or Peterson should have been permitted to withdraw his plea after receiving notice." (ECF No. 309, at 9–10.)  This argument is entirely frivolous, and Peterson's statements here are disingenuous, at best.  At the beginning of the Rule 11 hearing, the Court accidentally stated: "Okay.  So, Mr. Peterson you are here today for an anticipated plea of guilty to a criminal information which charges you with conspiracy to distribute more than a hundred grams of heroin in violation of 21 U.S. code section 841(a)(1) and *B 1 D*, and section 846." (ECF No. 286, at 4 (emphasis added).)  Despite the Court's citation to the incorrect subsection, Peterson was well aware that he was pleading guilty to a violation of 21 U.S.C. § 846 and 841(b)(1)(B), which carried a sentence with a mandatory minimum of five years of incarceration up to forty years.  Peterson's Plea Agreement and Statement of Facts both specifically identified the section to which he was pleading guilty, 21 U.S.C. § 846 and 841(b)(1)(B).  (ECF No. 247 ¶ 1; ECF No. 248 ¶ 1.)  In his Plea Agreement, Peterson also agreed that he faced a mandatory minimum sentence of five years and a statutory maximum of forty years. (ECF No. 247 ¶ 1.)

At the beginning of the Rule 11 hearing, the Government stated that "[t]he penalties for [the] offense are set forth in the plea agreement, specifically they are a minimum mandatory of five years imprisonment, a maximum of 40 years imprisonment." (ECF No. 286, at 3.)  Later, the Court highlighted to Peterson that he could be sentenced "anywhere between five and 40 years." (ECF No. 286, at 16.)  Peterson agreed that he understood that he could be sentenced anywhere in this range, and when asked if he had any other questions, Peterson did not indicate that he was confused or thought he might be sentenced to a maximum of 60 months.  Peterson is foreclosed by his validly entered Plea Agreement and by his statements under oath that he understood that he could be sentenced up to forty years in prison.  Although counsel did not object to the Court's

citation to the incorrect subsection, Peterson demonstrates no deficiency of counsel nor resulting prejudice as Peterson was certainly aware of the sentence that he could receive. Claim Four lacks merit and will be DISMISSED.[4]

### 3.    Appellate Claim

In Claim Five, Peterson argues that "Mr. Dinkin was ineffective for failing to raise the issue that the Government's Motion to Dismiss his appeal constitute[d] a breach of the plea agreement." (ECF No. 309, at 2.)  "In order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, the applicant must normally demonstrate" that appellate counsel performed deficiently and that a reasonable probability of a different result exists. *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000) (citing *Strickland*, 466 U.S. at 688, 694). Counsel had no obligation to assert all non-frivolous issues on appeal, especially since Peterson waived his right to appeal.  Rather, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)).  A presumption exists that appellate counsel "decided which issues were most likely to afford relief on appeal." *Bell*, 236 F.3d at 164 (quoting *Pruett v. Thompson*, 996 F.2d 1560, 1568 (4th Cir. 1993)).  "[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Id.* (quoting *Smith v. Robbins*, 528 U.S. 259, 288 (2000)).

Peterson contends that in his Plea Agreement, "he preserved the right to appeal a sentence for 'reasonableness,'" and faults counsel for failing to argue that the Government's motion to

---

[4] In his Reply, Peterson contends that "the Respondent did not address Grounds Four & Five in its response, thus they are deemed admitted." (ECF No. 315, at 17.) Contrary to Peterson's suggestion, the Government addressed both claims, although their argument is quite terse. (*See* ECF No. 313, at 8–9.)

14

dismiss the appeal breached that provision of the Plea Agreement. (ECF No. 309, at 10.) Peterson reimagines the terms of his Plea Agreement. The Plea Agreement stated in the section setting forth "Sentencing Guidelines, Recommendations, and Roles," that "the Court, after considering the factors set forth in 18 U.S.C. § 3353(a), may impose a sentence above or below the advisory guidelines range, subject only to review by higher courts for reasonableness." (ECF No. 247 ¶ 5.) Peterson apparently believes that this provision in his Plea Agreement guaranteed him the right to appeal his sentence and that the Fourth Circuit would be required to review his sentence on reasonableness grounds. It did not. Paragraph 5 refers to the Court's obligations and role in sentencing, not to Peterson's rights pertaining to an appeal. What is abundantly clear is that Peterson specifically agreed to the following:

> The defendant understands that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. Nonetheless, the defendant knowingly waives the right to appeal the conviction and any sentence within the statutory maximum described above (or the manner in which the sentence was determined) on the grounds set forth in 18 U.S.C. § 3742 or on any ground whatsoever other than an ineffective assistance of counsel claim that is cognizable on direct appeal. This agreement does not affect the rights or obligations of the United States as set forth in 18 U.S.C. § 3742(b).

(*Id.* at 6.) Despite his claims here, Peterson was aware that he was foreclosed from appealing his sentence. Nevertheless, despite its futility and likely at Peterson's insistence, counsel filed an appeal of Peterson's sentence arguing that it was unreasonable despite the specific waiver that barred a challenge to any sentence under forty years. Counsel also argued that Peterson did not "understand he [was] also waiving an appeal of the manner in which the sentence was determined," *United States v. Peterson*, No. 21-4176, at 8–9 (4th Cir. filed July 21, 2021) (as paginated by CM/ECF), and therefore, the "appeal waiver should not be imposed against him" because "the plea colloquy was confusing." *Id.* at 17. The Government moved to dismiss Peterson's appeal based on Peterson's waiver of the right to appeal. The Fourth Circuit was unpersuaded by Peterson's arguments that he did not understand the waiver and found Peterson's validly entered Plea

Agreement specifically barred an appeal of his sentence.  Counsel cannot be faulted for failing to advance the meritless argument that the Government breached the Plea Agreement by moving to dismiss the appeal.  Counsel was neither deficient nor was Peterson prejudiced.  Claim Five lacks merit and will be DISMISSED.

### III.  CONCLUSION

The § 2255 Motion, (ECF No. 308), will be DENIED.  Peterson's claims and the action will be DISMISSED.  A certificate of appealability ("COA") will be DENIED.[5]

An appropriate Order shall accompany this Memorandum Opinion.

Date: 14 November 2023
Richmond, Virginia

/s/
John A. Gibney, Jr.
Senior United States District Judge

---

[5] An appeal may not be taken from a final order in a § 2255 proceeding unless a judge issues a COA.  28 U.S.C. § 2253(c)(1)(B).  A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).  Peterson has not met this standard.